

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
02/06/2017

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 16-47428 (E.D. Mo.)** |
| **DIRECTORY DISTRIBUTING** | § | |
| **ASSOCIATES, INC.,** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |
| | § | |

| | | |
|---|---|---|
| | § | |
| **ERVIN   WALKER,   DONALD** | § | |
| **WALKER, ERIC ALLEN, JUSTIN** | § | |
| **COOPER,   REGINA   COUTEE,** | § | |
| **TRENT   JEDKINS,   AND   BRIAN** | § | **Adversary No. 16-03258** |
| **MATHIS,** | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| **DIRECTORY     DISTRIBUTION** | § | |
| **ASSOCIATES,   INC.,   AT&T** | § | |
| **CORPORATION, RICHARD PRICE,** | § | |
| **STEPHEN WASHINGTON, LAURA** | § | |
| **WASHINGTON,     ROLAND     E.** | § | |
| **SCHMIDT,   AND   WALLACE   A.** | § | |
| **SANDERS,** | § | |

Defendants.

## MEMORANDUM OPINION AND ORDER: (1) GRANTING THE DEBTOR'S MOTION TO TRANSFER VENUE TO MISSOURI; AND (2) DENYING THE PLAINTIFFS' MOTION TO TRANSFER VENUE TO CALIFORNIA
[Adv. Doc. Nos. 12, 15, & 29]

### I. INTRODUCTION

On November 23, 2016, a lawsuit styled *Ervin Walker, et al. v. Directory Distributing Associates, Inc., et al.*, Cause No. 2011-50578, pending in the 269th Judicial District Court of Harris County, Texas was removed to this Court (the "Texas Proceeding"). [Adv. Doc. No. 1]. Now before the Court are two dueling motions to transfer venue of the Texas Proceeding.

Donald Walker, Eric Allen, Justin Cooper, Regina Coutee, Brian Mathis, and the opt-in collective action members (the "Plaintiffs") want this Court to transfer the Texas Proceeding to the United States District Court for the Northern District of California (the "California Court"). [Adv. Doc. No. 12]. The Plaintiffs make this request on the grounds that there is an existing lawsuit pending in the California Court—*James Krawczyk, et al. v. Directory Distributing Associates, Inc. and AT&T Corp.*, Cause No. 3:16-cv-02531-vc (the "California Proceeding")—that the Plaintiffs contend is one-half of a Fair Labor Standards Act (the "FLSA") collective action, with the other half being the Texas Proceeding.

Opposing the Plaintiffs' request is Directory Distributing Associates, Inc., one of the defendants in the Texas Proceeding (the "Debtor"). The Debtor requests this Court to transfer the Texas Proceeding to the United States Bankruptcy Court for the Eastern District of Missouri, St. Louis Division (the "Missouri Court"). [Adv. Doc. No. 15]. The Debtor makes this request on the grounds that its Chapter 11 case is presently pending in the Missouri Court. AT&T Corporation ("AT&T"), one of the other defendants in the Texas Proceeding, has joined in the Debtor's request to transfer venue to the Missouri Court. [Adv. Doc. No. 29]. Not surprisingly, the Plaintiffs vigorously oppose the Debtor's request to transfer venue of the Texas Proceeding to the Missouri Court. [Adv. Doc. No. 30].

About the only issue on which all parties agree is that the Texas Proceeding should *not* be adjudicated in the Southern District of Texas. The Court will accommodate the parties' collective desire on this point.

## II.   PROCEDURAL BACKGROUND

On July 27, 2012, the Plaintiffs commenced the Texas Proceeding in the 269th Judicial District Court of Harris County alleging that the Debtor, Richard Price, Steve Washington, Laura

Washington, Roland E. Schmidt, Sandy Sanders, and AT&T (the "Defendants") owed them unpaid wages and overtime compensation under the FLSA for improper classification as independent contractors. [Adv. Doc. No. 1-3, p. 8 of 11]. The class of Plaintiffs was defined as "all current and former individuals employed by [the Debtor] at any time during the period of August 25, 2008 to the present who were classified as independent contractors and hired to deliver AT&T telephone directories." [*Id.* at p. 7 of 11]. Through an interlocutory order, the state court dismissed any non-Texas plaintiffs from the suit for failure to satisfy Texas' venue requirements. [Adv. Doc. No. 1-14]. The Plaintiffs appealed this order to the Texas Supreme Court, where review of the appellate decision affirming the order was denied on April 1, 2016. [Adv. Doc. No. 12, p. 3 of 15]; [Pls' Ex. No. 5].[1]

Shortly thereafter, in May 2016, the California Proceeding was filed in the California Court. [Adv. Doc No. 12, pp. 3–4 of 15]. The Plaintiffs contend that the California Proceeding is essentially the same lawsuit as the Texas Proceeding but includes the non-Texas plaintiffs who were dismissed from the Texas Proceeding as well as Texas-based plaintiffs seeking damages for a different time than described in the Texas Proceeding. [*Id.* at p. 4 of 15].

The Debtor initiated the main bankruptcy case by filing a Chapter 11 petition in the Missouri Court on October 14, 2016. (*In re Directory Distributing Assocs., Inc.,* Cause No. 16-47428, Bankr. E.D. M.O.). On November 23, 2016, all of the Defendants except AT&T removed the Texas Proceeding to this Court from the 269th Judicial District Court of Harris County. [Adv. Doc. No. 1]. Then, on January 3, 2017, the Plaintiffs filed their Motion to Transfer Venue seeking to transfer the Texas Proceeding to the California Court (the "Plaintiffs' Motion to Transfer"), [Adv. Doc. No. 12]; and on January 5, 2017, the Debtor filed its Motion to

---

[1] All exhibits cited herein are exhibits that were introduced into the record at the February 1, 2017 hearing held in this Court.

Transfer Venue seeking to transfer the Texas Proceeding to the Missouri Court (the "Debtor's Motion to Transfer"), [Adv. Doc. No. 15].   Finally, on January 26, 2017, AT&T filed its Consolidated Joinder in Debtor's Motion to Transfer and Opposition to Plaintiffs' Motion to Transfer ("AT&T's Joinder").  [Adv. Doc. No. 29].

On February 1, 2017, the Court held an evidentiary hearing on the Plaintiffs' Motion to Transfer and the Debtor's Motion to Transfer.   Only one witness, Ervin Walker (one of the Plaintiffs), testified.   The Court admitted exhibits one through thirty-two for the Plaintiffs; exhibits one through five for the Debtor; and exhibits one through fourteen for AT&T.   The Court heard closing arguments from counsel for all parties, and then took the matter under advisement.

For the reasons set forth herein, this Court enter this order transferring the Texas Proceeding to the Missouri Court.

### III.  JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY TO ISSUE A FINAL ORDER ON THE PLAINTIFFS' MOTION TO TRANSFER AND THE DEBTOR'S MOTION TO TRANSFER

#### A.  Jurisdiction

This Court has jurisdiction over the Plaintiffs' Motion to Transfer and the Debtor's Motion to Transfer pursuant to 28 U.S.C. § 1334(b).[2]   Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Code], or arising in or related to cases under title 11."   District courts may, in turn, refer these proceedings to the bankruptcy judges for that district.   § 157(a).  In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts.

---

[2] Any reference to any section (i.e., §) refers to a section in 28 U.S.C.

4

The pending dispute, i.e., whether this Court should transfer venue of the Texas Proceeding to the California Court or the Missouri Court, is a core proceeding pursuant to. § 157(b)(2)(A) because it affects the administration of the Debtor's Chapter 11 estate. *See In re Pope Vineyards*, 90 B.R. 252, 254 (Bankr. S.D. Tex. 1988) (concluding that a motion to transfer venue is a core proceeding); *In re Red Door Prop. Mgmt., LLC*, No. 11-02704-KMS, 2011 WL 5592910, at *2 (Bankr. S.D. Miss. Nov. 15, 2011) (same). Specifically, this Court's transfer of venue of the Texas Proceeding will affect the administration of the Debtor's Chapter 11 case because, among other things, the Texas Proceeding involves claims asserted by the Plaintiffs against the Debtor, and these claims must necessarily be liquidated, or at least estimated, in order for the Debtor to obtain confirmation of any plan of reorganization that it proposes and attempts to confirm in the Missouri Court.

Further, the venue dispute at bar is a core proceeding pursuant to the general "catch-all" language of § 157(b)(2)(O). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under §157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Here, the Plaintiffs' Motion to Transfer and the Debtor's Motion to Transfer are based, in part, upon § 1412, a statute which expressly governs transfer of venue disputes arising only from the filing of a bankruptcy petition.

For all of the reasons set forth above, this Court has jurisdiction over this venue dispute.

## B. Venue

Venue is proper in the Southern District of Texas under § 1452(a) because the state court where the Texas Proceeding was pending is located in this district. *See In re Trafficwatch*, 138 B.R. 841, 843 (Bankr. E.D. Tex. 1992) (holding that it is important to respect the original forum choice; therefore, Congress specifies that removal must be to the district where the litigation is pending, not where the bankruptcy is pending). Further, pursuant to the District Court's General Order 2012-6, the Texas Proceeding is subject to automatic referral to this Court upon the filing of the appropriate removal pleadings. *See In re: Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012); *see also* Bankr. L.R. 9027-1 (providing for removal directly to the bankruptcy court).

## C. Constitutional Authority to Enter a Final Order

In the wake of the Supreme Court's issuance of *Stern v. Marshall*, 564 U.S. 462 (2011), this Court is required to determine whether it has the constitutional authority to enter a final order in any dispute pending before it. In *Stern*, which involved a core proceeding brought by the debtor under § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 503. As already noted above, the pending dispute before this Court about where to transfer venue of the Texas Proceeding is a core proceeding pursuant to § 157(b)(2)(A). *See Pope Vineyards*, 90 B.R. at 254; *In re BDRC Lofts, Ltd.*, No. 12-11559-CAG, 2013 WL 395129, at *1 (Bankr. W.D. Tex. Jan. 31, 2013); *Red Door Prop.*, 2011 WL 5592910, at *2. Because *Stern* is replete with language emphasizing that the ruling is limited to the one specific type of core proceeding involved in that dispute, this Court concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a

final order here.   A core proceeding under § 157(b)(2)(A) is entirely different than a core proceeding under § 157(b)(2)(C).  *See, e.g., In re Davis*, 538 F. App'x 440, 443 (5th Cir. 2013) *cert. denied sub nom. Tanguy v. W.*, 134 S. Ct. 1002 (2014) ("[W]hile it is true that Stern invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' Stern expressly provides that its limited holding applies only in that 'one isolated respect' . . . We decline to extend *Stern's* limited holding herein."); *see also Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547–48 (B.A.P. 8th Cir. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in § 157(b)(2) is constitutional.").

Alternatively, even if *Stern* applies to all of the categories of core proceedings brought under § 157(b)(2), *see In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 294 n.12 (5th Cir. 2013) ("*Stern's* 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed by Section 157(b)(2) . . . ."), this Court still concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order in the matter at bar.  In *Stern*, the debtor filed a counterclaim based solely on state law; whereas, here, the dispute about venue is governed solely by federal law—namely two provisions of 28 U.S.C., i.e., §§ 1404(a) and 1412 and judicially-created bankruptcy law interpreting these provisions.  This Court is therefore constitutionally authorized to enter a final order on the Plaintiffs' Motion to Transfer and the Debtor's Motion to Transfer.  *See In re Airhart*, 473 B.R. 178, 181 (Bankr. S.D. Tex. 2012) (noting that the court has constitutional authority to enter a final order when the dispute is based upon an express provision of the Code (i.e., federal law) and no state law is involved).

Finally, in the alternative, this Court has the constitutional authority to enter a final order on the Debtor's Motion to Transfer and the Plaintiffs' Motion to Transfer because all of the parties have consented, impliedly if not explicitly, to adjudication of this venue dispute by this Court. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947 (2015) ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be expressed. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . ."). Indeed, the Plaintiffs filed their Motion to Transfer; the Debtor filed its Motion to Transfer; AT&T filed its Joinder supporting the Debtor's Motion to Transfer; a hearing was held on February 1, 2017; and none of the parties have ever objected to this Court's constitutional authority to enter a final order on these particular motions. If these circumstances do not constitute implied consent, nothing does.[3]

## IV.   TRANSFER TO THE EASTERN DISTRICT OF MISSOURI, ST. LOUIS DIVISION, IS PROPER UNDER EITHER § 1404(A) OR § 1412

### A.  Overview of Provisions Governing Transfer of Venue of Adversary Proceedings

The threshold question for this Court is which statute should it apply in ruling on the Plaintiffs' Motion to Transfer and the Debtor's Motion to Transfer:  § 1404(a) or § 1412?  In *Longhorn Partners*, Bankruptcy Judge Marvin Isgur concluded that § 1412 applies only to transfer of venue motions when the suit requested to be transferred is a core proceeding; otherwise, according to Bankruptcy Judge Isgur, if the suit is a non-core proceeding (i.e., "related to"), then § 1404(a) is the governing provision.[4]  *Longhorn Partners*, 408 B.R. at 97–98.

---

[3] In fact, in the Plaintiffs' Motion to Transfer, on page five, in footnote four, the Plaintiffs expressly set forth that this Court has the power to hear and resolve the venue dispute. [Adv. Doc. No. 12, p. 5 of 15]. Thus, the Plaintiffs have expressly consented to this Court entering final order on the venue dispute.

[4] The predecessor to § 1412 was § 1474. Section 1474 allowed bankruptcy courts to transfer disputes that arose under title 11 *or* were related to cases therein. However, § 1412 eliminated this language, replacing it solely with

While this Court agrees with Bankruptcy Judge Isgur that § 1412 applies only to "core" proceedings that arise under title 11, *see id.*, the Court recognizes that District Judge Andrew S. Hanen has found otherwise in *Campbell v. Williams*, No. 1:14-cv-097, 2015 WL 3657627, at *2 (S.D. Tex. June 12, 2015)—and this Court is thus bound by his decision. *See In re DePugh*, 409 B.R. 125, 131, 131 n.5 (Bankr. S.D. Tex. 2009) (holding that a decision from the District Court in the Southern District of Texas is binding on a Bankruptcy Court in the Southern District of Texas). Specifically, in *Campbell*, District Judge Hanen stated the following: "While there has been a split of authority in deciding which section controls, this Court interprets § 1404(a) as applying to the transfer of civil actions in general, and § 1412 as more specifically governing the transfer of actions that are 'related to' a bankruptcy proceeding." *Campbell*, 2015 WL 3657627, at *2. District Judge Hanen therefore initially performed a § 1412 analysis in determining whether to transfer venue of the adversary proceeding pending in his court—a dispute, it should be noted, that was a non-core proceeding. *Id.* at *2–4. It is also worth noting that, after doing so, he then conducted a § 1404(a) analysis and arrived at the same conclusion. *Id.* at *4–6.

In sum, the controlling precedent in the Southern District of Texas is that § 1412 applies to requests for transfer of core and non-core (related to) bankruptcy proceedings while § 1404(a) applies to general civil actions—i.e., non-bankruptcy actions. *Id.* at *2. Regardless, courts "essentially [apply] the same factors in analyzing transfers under" both provisions and "choosing one transfer provision over the other generally has no effect on the ultimate transfer decision." *Id.* Therefore, in analyzing the dispute at bar, this Court follows District Judge Hanen's ruling and begins with a § 1412 analysis. However, because the undersigned judge agrees with

---

"arising under title 11," thus indicating a legislative intent of taking away from bankruptcy courts the ability to transfer "related to" proceedings under § 1412 and now only permitting them to transfer under § 1412 when the dispute arises under title 11, or is considered "core." *Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R. 90, 97–98 (Bankr. S.D. Tex. 2009) (discussing this change thoroughly).

Bankruptcy Judge Isgur's analysis in *Longhorn Partners* and because District Judge Hanen conducted a § 1404(a) analysis following his § 1412 analysis, this Court will also perform a § 1404(a) analysis in the dispute at bar.

**B.  Under § 1412, Transfer of the Texas Proceeding to the Missouri Court is Appropriate**

First, in order to obtain a transfer under § 1412, the underlying suit must be at least "related to" the pending main bankruptcy case. *Id.* Second, under this section, the movant bears the burden of proof, by a preponderance of the evidence, to show that transfer is "in the interest of justice" *or* "for the convenience of the parties." *Id.* at *3. Thus, there are two, disjunctive sets of factors for the Court to consider.  If the movant satisfies either set of factors, then transfer may be granted.  *Id.*

The first set of factors contemplates whether the transfer is in the interest of justice.  The factors are:

> (a) economics of estate administration; (b) presumption in favor of the "home court"; (c) judicial efficiency; (d) ability to receive a fair trial; (e) the state's interest in having local controversies decided within its borders, by those familiar with its laws; (f) enforceability of any judgment rendered; (g) plaintiff's original choice of forum.

*Id.* (citations omitted).

The second set of factors contemplates whether the transfer is for the convenience of the parties.  The factors are:  "(a) location of the plaintiff and defendant; (b) ease of access to necessary proof; (c) convenience of witnesses; (d) availability of subpoena power for the unwilling witnesses; (e) expense related to obtaining witnesses." *Id.*  Therefore, as long as the suit is at least related to the pending bankruptcy proceeding, the movant need only show that the transfer is *either* in the "interest of justice" *or* "for the convenience of the parties" in order to obtain transfer.

1. <u>The Texas Proceeding is Not a Core Proceeding but is a Proceeding "Related to" the Debtor's Chapter 11 Case</u>

28 U.S.C. § 157 governs core proceedings. While this section does not specifically define core proceedings, subsection (b)(2) provides a comprehensive, yet non-exclusive, list of core proceedings. *In re Baudoin*, 981 F.2d 736, 740–41 (5th Cir. 1993); *Matter of Wood*, 825 F.2d 90, 95 (5th Cir. 1987). This list includes very specific proceedings and very broad proceedings. Some examples of specific core proceedings include preference actions, § 157(b)(2)(F), and fraudulent conveyance suits, § 157(b)(2)(H). Broad categories of core proceedings include "all matters concerning the administration of the estate," § 157(b)(2)(A), and "other proceedings affecting the liquidation of assets of the estate," § 157(b)(2)(O). The Fifth Circuit warns against a broad interpretation of § 157(b)(2)(O) and prefers to deem a proceeding as core under the more specific examples rather than fitting a particular proceeding into the catch-all language of subsections (b)(2)(A) and (b)(2)(O). *See Wood*, 825 F.2d at 95.

Nevertheless, the Fifth Circuit has not limited the definition of core proceedings solely to the specific examples set forth in the laundry list of § 157(b)(2). Rather, the Fifth Circuit has defined a core proceeding as one which "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Id.* at 97; *Garner v. BankPlus*, 470 B.R. 402, 405–06 (S.D. Miss. 2012). For example, "[w]here all of a case's alleged tortious conduct and breaches of contract occurred pre-petition, the case is non-core to the bankruptcy proceeding." *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 783 (E.D. Tex. 2001); *see also WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 609 (S.D. Tex. 1999) ("A number of courts have held that state law claims for pre-petition breaches of contract are not core matters.") (citing *Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*, 219 B.R. 363, 367 (Bankr. S.D. N.Y. 1998); *In re TVR of Am., Inc.*,

123 B.R. 159, 162 (Bankr. D. Conn. 1991); *Mellon v. Del. & Hudson R.R. (In re Del. & Hudson Ry. Co.)*, 122 B.R. 887, 894 (D. Del. 1991)). When determining whether a proceeding is core, a court must consider both the form as well as the substance of the proceeding. *Wood*, 825 F.2d at 97 (citing *In re World Fin. Servs. Ctr., Inc.*, 64 B.R. 980, 984–87 (Bankr. S.D. Cal. 1986)). *Southmark* warns that "state law origin of [a removed claim] is not dispositive" of whether a proceeding is core or non-core because "many truly bankruptcy issues, like the determination of the basis for creditors' claims, turn on state law." *Southmark Corp.*, 163 F.3d at 930.

Here, this Court concludes that the Texas Proceeding is a non-core (i.e., "related to") proceeding. First, the Texas Proceeding could not arise solely in the context of bankruptcy because it is a suit based on the FLSA; indeed, there is no reference in the Bankruptcy Code to the FLSA. Unlike the claims in *Southmark*, which were heavily intertwined with the pending bankruptcy, the claims here are not based whatsoever on the Bankruptcy Code nor would they normally arise in a bankruptcy. *Cf. Southmark*, 163 F.3d at 931 (stating that the malpractice claim against certain bankruptcy professionals arose from a contract "whose terms were approved by the bankruptcy court"). The outcome of who prevails in the Texas Proceeding could certainly affect the administration of the Debtor's estate contemplated under § 157,[5] but it "is not of a nature that could only arise in a bankruptcy case"; thus, it is assuredly related to the Debtor's pending Chapter 11 bankruptcy but it is not a core proceeding. *See In re Petroleum Prods. & Servs., Inc.*, 561 B.R. 662, 665 (Bankr. S.D. Tex. 2016) (finding state contract claims that *could* affect administration of the estate to be non-core).

---

[5] It could affect the administration of the Debtor's Chapter 11 estate because adjudication (or settlement) of the Texas Proceeding will help determine the number of allowed claims against the Debtor's estate as well as the amount of each of those allowed claims.

In sum, the Texas Proceeding is a "related to" proceeding and pursuant to *Campbell*, the Court may transfer venue of the Texas Proceeding under § 1412.

    2.   Application of the "Interest of Justice" Factors to the Texas Proceeding

Having found that the Texas Proceeding is related to the Debtor's Chapter 11 case, the Court now analyzes the "interest of justice" factors.

    *a.  The "economics of the estate administration" factor*

This is the most important consideration of the transfer analysis. *Matter of Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239, 1247 (5th Cir. 1979). This factor weighs in favor of transfer to the Missouri Court because the Debtor will save precious estate funds litigating the Texas Proceeding in its hometown, thereby maximizing the distribution to creditors. For example, as the Debtor argues, defending itself in the Texas Proceeding in the same court that is presiding over its pending Chapter 11 case would help lower attorney's fees and travel costs by avoiding paying attorney's fees to local counsel in California and incurring airfare and lodging costs for trips to California. [Adv. Doc. No. 15, p. 8 ¶ 16]; *see also infra* Part (IV)(C)(2) (discussing the shutdown of the Debtor's operations and the need to conserve existing cash for distribution to holders of allowed claims).

    *b.  The "presumption in favor of the 'home court'" factor*

The Debtor filed bankruptcy in the Missouri Court, which weighs strongly in favor of transferring the Texas Proceeding to the "home court," i.e., the court where the bankruptcy is pending. *Campbell*, 2015 WL 3657627, at *4. Indeed, the District Court of the Southern District of Texas, applying a § 1412 analysis, has noted that there is a strong presumption of transferring the dispute to the court where the bankruptcy case is pending. *Id.*; *see also Orthodontic Centers of Tex., Inc. v. Corwin*, No. H-06-2585, 2007 WL 173220, at *1 (S.D. Tex.

13

Jan. 18, 2007) (quoting *Zhang v. Rothrock*, No. H-05-3461, 2006 WL 213951, at *1 (S.D. Tex. Jan. 25, 2006)). The Plaintiffs assert that the strong presumption given to the home court only applies where the proceeding at issue is a core proceeding, and that this presumption does not apply where the proceeding is non-core (such as the Texas Proceeding). Yet, in *Campbell*, District Judge Hanen was analyzing whether to transfer venue of a non-core proceeding, and he expressly found that there was a strong presumption of transferring that proceeding to the home court in South Carolina. 2015 WL 3657627, at *4. The undersigned judge is bound by this precedent and will therefore adhere to it in the dispute at bar. *See DePugh*, 409 B.R. at 131, 131 n. 5 (holding that a decision from the District Court in the Southern District of Texas is binding on a Bankruptcy Court in the Southern District of Texas).

Moreover, even if the undersigned bankruptcy judge was not bound by the "strong presumption" precedent, other bankruptcy courts give deference to the "home court" rule. *See e.g.*, *In re Adkins Supply*, No. 1:14-CV-095-C, 2015 WL 1498856, at * 4 (Bankr. N.D. Tex. Mar. 27, 2015) ("And most important, although §§ 1404(a) and 1412 are similar, § 1412 is tailored to bankruptcy cases and proceedings; it grants deference for the 'home court' rule—venue where the bankruptcy case is pending—and considers the preservation of the estate as an important interest; an analysis from § 1404(a) ignores the bankruptcy."); *In re Think3, Inc.*, 529 B.R. 147, 208 (Bankr. W.D. Tex. 2015) ("A presumption exists that the district in which the underlying bankruptcy case is pending is the appropriate district for determination of an adversary proceeding."). This Court agrees with this principle, and accordingly, with respect to the Texas Proceeding, finds that this factor heavily favors transfer to the Missouri Court.

       c.  *The "judicial efficiency" factor*

Judicial efficiency favors a transfer to the Missouri Court. This is so because the Debtor will necessarily be filing and attempting to obtain confirmation of a plan of reorganization in its Chapter 11 case, which, among other things, will have to set forth how many classes of claims there are and how these classes will be treated (i.e., will they receive any distribution of cash, and, if so, when). *See In re Save Our Springs (S.O.S.) Alliance, Inc.*, 632 F.3d 168, 174 (5th Cir. 2011); *In re Idearc, Inc.*, 423 B.R. 138, 160–61 (Bankr. N.D. Tex. 2009).[6] Thus, whether the Plaintiffs like it or not, their claims, among others, will be the subject of hearings to be held in the Missouri Court. Indeed, because the Texas Proceeding will doubtless require substantial time to litigate fully, the Debtor has the option of requesting the Missouri Court to estimate the claims for purposes of going forward expeditiously with the plan confirmation process. *See* 11 U.S.C. § 502(c)(1); *Matter of Brints Cotton Mktg., Inc.*, 737 F.2d 1338 (5th Cir. 1984) (explaining the bankruptcy court's authority to estimate claims).[7] Hence, there is little doubt that there will be one or more hearings in the Missouri Court concerning the issues involved in the Texas Proceeding. Under these circumstances, it would promote judicial efficiency and economy to have the Missouri Court preside over not only the main Chapter 11 case, but also the Texas Proceeding.

       The Plaintiffs argue that transferring the Texas Proceeding to the California Court is more appropriate because the Plaintiffs are entitled to a jury trial, which they can receive from the District Court in California as an Article III court, whereas the Missouri Court—being an

---

[6] There is no question that the Debtor intends to file a plan of reorganization—which could be a Chapter 11 plan of liquidation—as counsel for the Debtor made such a representation to the Missouri Court at the January 9, 2017 hearing. [*See* Pls' Ex. No. 21, p. 10, lns. 1–2 ("The Debtors [sic] intend to file a plan in this case.")].

[7] In fact, at the January 9, 2017 hearing in the Missouri Court, counsel for the Debtor informed Bankruptcy Judge Surratt-States that the Debtor might well seek to estimate the Plaintiffs' claims in order to timely prosecute a plan of reorganization. [Pls' Ex. No. 21, p. 10, lns. 15–22].

Article I court—cannot conduct a jury trial. The weakness in this argument is that the United States District Court for the Eastern District of Missouri is an Article III court that can also conduct a jury trial. Hence, upon transfer of the Texas Proceeding to the Missouri Court, Bankruptcy Judge Surratt-States can make a report and recommendation to the District Court in the Eastern District of Missouri that it withdraw the reference if and when a trial is ever required, but that she handle all pretrial matters.[8]

### d. The "ability to receive a fair trial" factor

This factor is neutral, as no evidence has been introduced tending to show that the Missouri Court or the California Court has a bias to ruling in favor of one party over another.

### e. The "state's interest in having local controversies decided within its borders" factor

Missouri has the largest interest in the Texas Proceeding. First, the assets that the Plaintiffs look to for payment of their claims belong to a St. Louis business, i.e., the Debtor. Second, a "[l]ocal interest also arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community." *Adaptix, Inc. v. HTC Corp.*, 937 F.Supp.2d 867, 878 (E.D. Tex. 2013) (discussing this factor in the context of a § 1404(a) analysis). There is no doubt that here, the reputation of the individuals living in Missouri, who worked for the Debtor and may have participated in the alleged FLSA violations, will be questioned.

Third, Missouri has an interest in ensuring that companies whose headquarters are in the state comply with federal law—here, the FLSA. *See Campbell*, 2015 WL 3657627, at *6. California has less interest than does Missouri: the Debtor, its management, and its assets are located in Missouri. Therefore, this factor weighs in favor of transfer to the Missouri Court.

---

[8] In fact, the Plaintiffs have filed a motion to withdraw reference in this Court, [Adv. Doc. No. 11], and this motion will be pending upon transfer of the Texas Proceeding to the Missouri Court. Hence, the Plaintiffs can request a hearing from Bankruptcy Judge Surratt-States and request that she recommend that the Texas Proceeding be withdrawn to the United States District Court for the Eastern District of Missouri.

*f. The "enforceability of any judgment rendered" factor*

None of the parties have argued that either the Missouri Court or the California Court would have difficulty enforcing a judgment; thus, this factor is neutral.

*g. The "Plaintiffs' choice of forum" factor*

The Plaintiffs' choice of forum, while certainly one factor to consider, is not an overriding one here. This is so because the Plaintiffs, who originally filed suit in Houston, are now requesting this Court to transfer venue out of their home state. Only one of these Plaintiffs—Ervin Walker—actually came to the February 1, 2017 hearing to give testimony, and his testimony revealed that his request for a transfer of the Texas Proceeding to the California Court is largely based upon the desires of Plaintiffs' counsel. [Hr'g held on Feb. 1, 2017 at 9:51:35 A.M.–9:51:47 A.M.]. Indeed, Mr. Walker testified that it is financially less expensive for him to travel to and stay in St. Louis than San Francisco. [*Id.* at 9:51:01 A.M.–9:52:20 A.M.]. Further, regardless of the Plaintiffs' choice of forum, the decision to transfer is within this Court's discretion. *Campbell*, 2015 WL 3657627, at *3. Under all of these circumstances, the Court gives little weight to the "choice of forum" factor.

In sum, the interest of justice factors heavily weigh in favor of transferring the Texas Proceeding to the Missouri Court. Because § 1412 is disjunctive, the Court could stop at this point. However, for purposes of completeness, it will evaluate the "convenience of the parties" factors.

3.  <u>Application of the "Convenience of the Parties" Factors to the Texas Proceeding</u>

Alternatively, the Court will grant transfer to the Missouri Court based on the convenience of the parties. The Court evaluates each factor in turn.

### a. The "location of the plaintiff and defendant" factor

This factor weighs in favor of transfer to Missouri. This is because the Debtor and many of its principals and employees reside in Missouri, [*see* Pls' Ex. No. 3]; [*see also* **Exhibit A**, attached hereto]; moreover, while none of the Plaintiffs in the Texas Proceeding reside in Missouri, they all live in Texas, and any trips that they have to make to attend hearings will be less expensive for them because they will be travelling from Texas to Missouri, not from Texas to California.[9]  Indeed, Mr. Walker testified that travel and lodging costs to St. Louis are less expensive than such costs to San Francisco. [Hr'g held on Feb. 1, 2017 at 9:51:01 A.M.–9:52:20 A.M.]. Further, to the extent that the Plaintiffs contend that the Texas Proceeding should be transferred to the California Court because the California Proceeding has many more plaintiffs who live in California, there is no evidence in the record as to where all of the plaintiffs in the California Proceeding actually reside. Thus, overall, the "location of the plaintiff and the defendant" factor favors a transfer to the Missouri Court.

### b. The "ease and access to necessary proof" factor

The Debtor argues[10] that this factor weighs in favor of transfer to the Missouri Court because the Debtor, a business located in St. Louis, [Adv. Doc. No. 15, p. 3 ¶ 4], has its records regarding the Plaintiffs' employment at its offices in Missouri. [*Id.* at p. 11 ¶ 25]. Indeed, at a hearing in the Missouri Court on January 9, 2017, Bankruptcy Judge Surratt-States, in granting the Debtor's motion confirming that the automatic stay applies not only to the Debtor but also to the indemnified non-debtor co-defendants (such as AT&T), expressly noted that "the claims

---

[9] *See* **Exhibit A**, attached. This Exhibit sets forth information about where these individuals reside and how far their residences are from the Missouri Court. This information establishes that these individuals are all within the subpoena power of the Missouri Court.

[10] The Court recognizes that the Debtor's arguments are also adopted by AT&T because of AT&T's Joinder and comments made by AT&T's counsel in his closing argument at the February 1, 2017 hearing. [Hr'g held on Feb. 1, 2017 at 10:52:34 A.M.–10:52:43 A.M.].

against AT&T are essentially claims against the debtor. The debtor has the necessary records, and it all seems very intertwined." [Debtor's Ex. No. 5, p. 37 of 45]. She was thus telegraphing to the parties that in her view, the Plaintiffs' claims against AT&T are to be viewed as claims against the Debtor, and that all of these claims can be evaluated by reviewing the Debtor's records—the bulk of which are in fact located in Missouri. [Pls' Ex. No. 3, p. 30 of 37]. In opposition, the Plaintiffs argue that access to proof is a neutral factor because the Debtor has admitted that all of its records are electronic, and therefore, can be accessed from anywhere. [Hr'g held on Feb. 1, 2017 at 10:17:34 A.M.–10:18:27 A.M.].

This Court disagrees with the Plaintiffs. The Fifth Circuit has recognized that developments in technology that make access to sources of proof easier "does not render this factor superfluous." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008). Because the employment records are located at the Debtor's headquarters, which are in St. Louis, [Debtor's Ex. No. 2, p. 1 of 13]; [Pls' Ex. No. 3, p. 29–30 of 37]; and because there was no evidence introduced that there are any relevant records in California, this factor weighs in favor of transfer to the Missouri Court.[11] *See Volkswagen*, 545 F.3d at 316 (finding this factor to weigh in favor of transfer when the records of the accident were located at the desired venue).

   *c. The "convenience of witnesses" factor*

This is one of the most important factors. *Adaptix*, 937 F.Supp.2d at 875. The Fifth Circuit states that if the distance to travel is more than 100 miles, the inconvenience for witnesses increases. *Volkswagen*, 545 F.3d at 317 (stating that "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled") (internal

---

[11] For further evidence proving that the relevant records are with the Debtor, *see* Pls' Ex. No. 22. Here, counsel for the Plaintiffs emailed counsel for the Debtor and the other Defendants requesting certain documents that are in the Debtor's possession, including but not limited to: GPS data for the employees, daily reports, verification reports, quality reports, "do not rehire" lists, tax returns, etc. *Id.*

citation omitted). The Missouri Court is 780 miles away from this Court and the California Court is 1,926 miles away from this Court. Clearly, it is much less expensive for the Plaintiffs—who are all in Texas—to travel to Missouri than California. Indeed, Mr. Walker, although he wants the Texas Proceeding transferred to the California Court, admitted on cross examination that it is less of a financial burden for him to travel and stay in St. Louis than in San Francisco. [Hr'g held on Feb. 1, 2017 at 9:51:01 A.M.–9:52:20 A.M.]. This would also be true for all of the other Plaintiffs in the Texas Proceeding. Therefore, this factor weighs in favor of transferring venue to the Missouri Court and denying the Plaintiffs' Motions to Transfer.

> d. *The "availability of subpoena power for the unwilling witnesses" factor*

The Debtor asserts that many of the relevant witnesses who can authenticate business records are in Missouri. [Adv. Doc. No. 15, p. 11 ¶ 25]. Indeed, the Debtor's schedules reveal that six of the accountants and bookkeepers who maintained the Debtor's books and records two years before the commencement of the chapter 11 case reside in Missouri. [**Exhibit A**, attached hereto]; [Pls' Ex. No. 3, pp. 31–32 of 37]; *see also Commonwealth*, 596 F.2d at 1248 (favoring transfer to the district where those in management of the debtor resided). Thus, these individuals are certainly subject to the Missouri Court's subpoena power. *See* Fed. R. Bankr. P. 9016 (incorporating 45(c)(1)(A)–(B) which states that "A subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense."). Further, the Debtor's two Presidents, two Vice Presidents, and General Counsel & Secretary all

reside within the Missouri Court's subpoena power.[12]  [**Exhibit A**, attached hereto]; [Pls' Ex. No. 3, pp. 31–32 of 37].   None of these witnesses are within the subpoena powers of the California Court.   Thus, because *eleven* potential material witnesses are definitely subject to the Missouri Court's subpoena power, and none of them are within the California Court's subpoena power, this factor weighs heavily in favor of transfer to the Missouri Court.

   *e. The "expense related to obtaining witnesses" factor*

   As stated in the "convenience of witnesses" factor section, the expenses of having willing witnesses attend would be significantly lower in the Missouri Court than in the California Court. *See supra* Part IV(B)(3)(c).   Further, the expenses of obtaining unwilling witnesses would also be reduced, as eleven of those potential witnesses reside within the jurisdiction of the Missouri Court and are subject to the subpoena power of the Missouri Court. *See supra* Part IV(B)(3)(d). Therefore, this factor also weighs in favor of transfer to the Missouri Court

   4. Summary

   Overall, both sets of factors weigh heavily in favor of transfer to the Missouri Court.   Out of the seven factors discussed in the "interest of justice" section, four weigh in favor of transfer to the Missouri Court, two are neutral, and one weighs against, but is given very little weight. Out of the five factors discussed in the "convenience of the parties" section, all five weigh in favor of transfer to the Missouri Court.

   In sum, in the interest of justice and for the convenience of the parties, transfer of the Texas Proceeding to the Missouri Court is appropriate.

---

[12] *See id.*, attached.

**C. Alternatively, Under § 1404(a), Transfer of the Texas Proceeding to the Missouri Court is Appropriate**

The first threshold question under a § 1404(a) analysis is:   Could the Texas Proceeding originally have been filed in the Missouri Court?   Section 1404(a) allows transfer of a suit to a district "where it might have been brought." § 1404(a).   Here, the Texas Proceeding could have been brought in the United States District Court for the Eastern District of Missouri, St. Louis Division because it is "a judicial district in which any defendant resides . . . ." § 1391(b)(1); *Bomkamp v. Hilton Worldwide, Inc.*, No. 4:13-CV-1569, 2014 WL 897368, at *6 (E.D. Mo. Mar. 6, 2014) ("A corporate defendant resides in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question") (quoting § 1391(c)(2)).   Indeed, the Debtor emphasizes that its headquarters are located in Missouri and it therefore "resides" in this state. [Adv. Doc. No. 15, p. 10 ¶ 24]; [Debtor's Ex. No. 2, p. 1 of 13].   Therefore, this Court can order transfer of the Texas Proceeding to the Missouri Court under § 1404(a).

The second threshold question is whether the Texas Proceeding is a "civil action."   There is no doubt that the Texas Proceeding is a civil action, *see Longhorn Partners*, 408 B.R. at 98; thus, § 1404(a) applies.

1. Overview of § 1404(a)

Pursuant to § 1404(a), a transfer must be "for the convenience of the parties and witnesses, in the interest of justice." § 1404(a); *Volkswagen*, 545 F.3d at 314.   The Fifth Circuit has developed a series of private and public interest factors to consider in determining if transfer is appropriate under this statutory language.   The Fifth Circuit articulates these factors as follows:

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.   The public

interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Volkswagen*, 545 F.3d at 314 (internal citations, quotations, and comments omitted); *see also In re Rashad*, Adv. No. 10-3362, 2010 WL 4976949, at *2 (Bankr. S.D. Tex. Dec. 2, 2010) (holding that a consideration of whether to transfer an adversary proceeding considers the above listed factors).

The list of factors is neither exhaustive nor exclusive. *Id.* at 315. Further, no one factor "can be said to be of dispositive weight." *Volkswagen*, 545 F.3d at 314 (citations and quotations omitted). The entity moving for transfer bears "the burden of showing by a preponderance of evidence that a transfer is in the interest of justice or for the convenience of the parties." *Campbell*, 2014 WL 3657627, at *3 (internal quotations and citation omitted). The Court now applies these factors to the suit at bar and determines that transfer to the Missouri Court is appropriate.

2. The Private Factors Weigh in Favor of Transfer to the Missouri Court

As discussed above in the § 1412 analysis, the first three factors[13] weigh in favor of transfer to the Missouri Court. *See supra* Part IV(B)(3)(b)–(e). The fourth factor, "all other practical problems that make trial of a suit easy, expeditious, and inexpensive" also weighs in favor of transfer to the Missouri Court. This is primarily because the Debtor is no longer operating and thus no longer has any ability to generate cash flow, [Pls' Ex. No. 21, p. 32, lns. 1–10]; rather, the Debtor is now holding all of its remaining cash in anticipation of distributing these funds to holders of allowed claims as part of a plan confirmation process. If this cash has to be used to pay attorneys to represent the Debtor in the California Proceeding, then it will be

---

[13] The first three factors are: (1) the relative ease and access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; and (3) the cost of attendance for willing witnesses.

dissipated, leaving little—if anything—to distribute to holders of allowed claims.[14] As one of the attorneys representing AT&T so aptly stated during the January 9, 2017 hearing before the Missouri Court: "The $3 million in assets that they [i.e., the Debtor] have as of today are dissipating, we have a 'melting ice cube.'" [Pls' Ex. No. 21, p. 27, lns. 1–2]. Indeed, the Debtor has already spent an exorbitant amount of money in attorney's fees defending itself in both the Texas and California Proceedings; as of November 15, 2016, the Debtor had spent—at the least—$150,000.00 to $200,000.00 on attorneys just in the few months prior to November 15, 2016. [Pls' Ex. No. 26, p. 14, lns. 17–25]. Thus, if this Court transfers the Texas Proceeding to the California Court, the Debtor faces the very significant, practical problem of having to spend so much cash defending itself in the California Court that nothing will be left for distribution to creditors in the Debtor's Chapter 11 case. And, the defense costs include not only attorneys' fees but also travel expenses to California and lodging expenses for staying in San Francisco. The more money the Debtor can preserve now, the more will be left to benefit all of the holders of allowed claims in the Debtor's Chapter 11 case, including any of the Plaintiffs who establish that they hold allowed claims. In sum, this factor weighs in favor of transfer to the Missouri Court.

All in all, the private factors weigh in favor of transferring the Texas Proceeding to the Missouri Court.

3. The Public Factors Weigh in Favor of Transfer to the Missouri Court

   a. *The administrative difficulties flowing from court congestion*

There is no evidence indicating the relative congestion of the Missouri Court or the California Court. Therefore, this factor is neutral.

---

[14] At the hearing on January 9, 2017 before the Missouri Court, counsel for the Debtor, in requesting Bankruptcy Judge Surratt-States to issue an order setting forth that the automatic stay encompasses indemnified, non-debtor co-defendants stated the following: "If Your Honor does not extend or recognize the stay, we [i.e., the Debtor] will be forced to spend what little resources we have litigating in foreign courts to what might be a defense verdict but an ultimate loss, and an ultimate loss to other creditors." [Pls' Ex. No. 21, p. 11, lns 5–9].

*b.  The local interest in having localized interests decided at home*

As discussed above, this factor weighs in favor of transfer to the Missouri Court.  *See supra* Part IV(B)(2)(e).

*c.  The familiarity of the forum with the law that will govern the lawsuit*

The evidence introduced at the hearing included filings from the California Court and the Missouri Court.  The filings in the California Court indicate that District Judge Vince Chhabria has become somewhat acquainted with the issues in the California Proceeding by virtue of having issued an order denying AT&T's motion to dismiss.  [Pls' Ex. No. 8].  Other than this ruling, however, the other filings in the California Court reflect: (1) stipulations of counsel regarding various briefing schedules and case management orders. [Pls' Ex. Nos. 9 & 11]; and (2) a few extremely short orders, [Pls' Ex. Nos. 10, 14, 15, 16, & 17].  There have simply been no substantive rulings other than the order denying the motion to dismiss.  [Pls' Ex. No. 1].  Thus, although District Judge Chhabria has become somewhat familiar with the issues in the California Proceeding—which are clearly the same or similar issues as those in the Texas Proceeding[15]—he has not spent a substantial time dealing with the dispute.  Indeed, he has referred the California Proceeding to Magistrate Judge Ryu for a settlement conference.  [Pls' Ex. Nos. 2 & 24].  Thus, while District Judge Chhabria has some familiarity with the issues in the Texas Proceeding by virtue of his familiarity with the California Proceeding, his knowledge is not at the level it would be if he had already held a pre-trial conference and was on the verge of presiding over a trial.

---

[15] The Defendants concede that the California Proceeding is essentially identical to the Texas Proceeding.  Indeed, Mr. Clement, counsel for AT&T, stated that "The [California Proceeding] is the people who originally were in the [Texas Proceeding], but the Texas state court severed them out, and then they went and filed in San Francisco, so it's all originally this lawsuit."  [Pls' Ex. No. 4, p. 9, lns. 18–22].  Moreover, in its Motion for Confirmation that the Automatic Stay Pursuant to 11 U.S.C. § 362 Includes Indemnified Non-Debtor Co-Defendants [i.e., AT&T], the Debtor admits that the issues in the Texas Proceeding and the California Proceeding are identical.  [Debtor's Ex. No. 3, pp. 2–3 ¶ 4].

Meanwhile, in the Missouri Court, Bankruptcy Judge Surratt-States has already held a hearing on the Debtor's Motion for Confirmation that the Automatic Stay Includes Non-Debtor Co-Defendants. [Debtor's Ex. Nos. 3 & 5]. The transcript of the hearing on this motion reflects that Bankruptcy Judge Surratt-States has also become familiar with the issues in the Texas Proceeding and the California Proceeding. Indeed, at the January 9, 2017 hearing on these two motions, Bankruptcy Judge Surratt-States made the following comment to the Debtor's counsel: "Also, if there is going to be some mechanism to resolve *these* claims [alleged in the California Proceeding and the Texas Proceeding], that needs to be proposed, and let's see what we can do with that." [Debtor's Ex. No. 5, p. 37 lns. 19–21 (emphasis added)]. Not surprisingly, soon after Bankruptcy Judge Surratt-States made these remarks, the Debtor filed, in her court, a motion to compel all parties to participate in a mediation, [Debtor's Ex. No. 4], and Bankruptcy Judge Surratt-States will no doubt eventually rule on this motion.

Given the above-described circumstances, this Court finds that both the California Court and the Missouri Court have each become familiar with the issues of the California Proceeding and the Texas Proceeding, but that neither have become so intimately familiar with these issues that "the familiarity of the forum with the law" factor weighs in favor of transferring venue to one forum over the other. Stated differently, it is not as if either the California Court or the Missouri Court have had multiple hearings, disposed of motions for summary judgment, and set the dispute down for trial. For all of these reasons, the Court finds that this factor is neutral.

*d. The avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law*

This factor is neutral because neither the Plaintiffs nor the Defendants have identified any concerns regarding conflict of laws.

4. Summary of the § 1404(a) Factors

In sum, of the private factors, all four weigh in favor of transferring the Texas Proceeding to the Missouri Court; and of the public factors, one factor weighs heavily in favor of transfer to the Missouri Court and three factors are neutral. Therefore, this Court finds that the Debtor has met its burden and that transfer to the Missouri Court pursuant to § 1404(a) is appropriate.

## V. CONCLUSION

The Court finds that pursuant to the factors relevant to § 1412, transfer of the Texas Proceeding to the Missouri Court is warranted. In the alternative, the Court finds that under § 1404(a), the majority of the private and public factors, when viewed collectively, weigh in favor of transferring the Texas Proceeding to the Missouri Court. These findings are in line with District Judge Hanen's observation that "choosing one transfer provision over the other generally has no effect on the ultimate transfer decision." *See Campbell*, 2014 WL 3657627, at *2.

It is therefore:

**ORDERED** that Plaintiffs' Motion to Transfer is DENIED; and it is further

**ORDERED** that the Debtor's Motion to Transfer is GRANTED; and it is further

**ORDERED** that the Clerk of Court shall immediately transfer Adversary Proceeding Number 16-03258 to the United States Bankruptcy Court for the Eastern District of Missouri, St. Louis Division.[16]

Signed on this 6th day of February, 2017.

Jeff Bohm
United States Bankruptcy Judge

---

[16] Once this adversary proceeding is transferred, the Bankruptcy Court for the Eastern District of Missouri can resolve the two pending motions on the docket, namely: (1) the Motion to Limit Process and Pleadings, [Adv. Doc. No. 2]; and (2) the Plaintiffs' Motion to Withdraw Reference, [Adv. Doc. No. 11].

## Exhibit A

| Accountants and Bookkeepers who maintained the Debtor's books and records within the two years before the filing of the Debtor's Chapter 11 bankruptcy petition[1] | | | | |
|---|---|---|---|---|
| Name | Position | Date of Employment with Debtor | Residence | Distance from the Missouri Court[2] |
| Michael Shelton | Accountant and/or Bookkeeper [no title listed] | 07/01/72 to 12/31/15 | 348 Brunhaven Court Chesterfield, MO 63017 | 22.50 miles |
| Lee Garven | Senior Account Manager | 06/12/72 to 12/31/15 | 208 Centerfield Drive O'Fallon, MO 63366 | 34.40 miles |
| | GW Drago Accounting Support | 01/01/16 to 03/31/16 | | |
| Susan Westrich | Senior Accountant | 09/26/85 to 12/31/15 | 6203 Hawkins Farm Place, St. Louis, MO 63129 | 16.90 miles |
| | Individual Accounting Consultant/Banking Assistance | 01/01/16 to present | | |
| Rick Weurle | Accountant | 12/12/94 to 12/31/15 | 2685 Narraganset Drive, Florissant, MO 63033 | 17.50 miles |
| | GW Drago Accounting Support | 01/01/16 to present | | |
| Hope Brennan | Senior Tax Accountant | ??/21/08 to 12/31/15 | 25 Northwide Drive, St. Peters, MO 63376 | 33.7 miles |
| | Subcontractor of Rich Rackers | 01/01/16 to present | | |
| Richard Rackers | Director Tax & Quality | 05/01/83 to 12/31/15 | 904 Shiloh Place, Jefferson City, MO 65109 | 13.60 miles |
| | Independent Tax Advisor | 01/01/16 to present | | |

---

[1] *See* the Debtor's Schedules. [Pls' Ex. No. 3, pp. 31–32 of 37] (Note: this list includes all of the accountants and bookkeepers. Stated differently, the Debtor does not have accountants or bookkeepers who reside outside of Missouri).

[2] The courthouse for the Eastern District of Missouri, St. Louis Division is located at 111 S. 10th Street, St. Louis, MO 63102. All distances from the Missouri Court were calculated using https://www.google.com/maps.

| List of Debtor's Officer, Directors, Managing Members, et al. in Control of the Debtor at the Time of the filing of the Chapter 11 Petition[3] | | | | |
| --- | --- | --- | --- | --- |
| Name | Position | Date of Employment with Debtor | Residence | Distance from the Missouri Court[4] |
| Indenture Trust of John H. Runk | "John is president/shareholder" | Presently holds this position | U/A dtd 08/23/99 8512 State Route C, St. Genevieve, MO 63670 | 64.50 miles |
| Jack W. Runk Irrevocable Gift Trust | "Shareholder/ Jack was a VP" | Presently is a shareholder, but was VP from 08/20/84 to 12/31/15 | U/A dtd 03/30/05 8512 State Route C, St. Genevieve, MO 63670 | 64.50 miles |
| Kristy Runk Byran Irrevocable Gift Trust | "Secretary, shareholder" | Presently holding this position during wind up | U/A dtd 03/30/05 8512 State Route C, St. Genevieve, MO 63670 | 64.50 miles |
| Glen J. Runk Irrevocable Gift Trust | "shareholder, never been an officer" | Presently a shareholder | U/A dtd 03/30/05 8512 State Route C, St. Genevieve, MO 63670 | 64.50 miles |

---

[3] *See* the Debtor's Schedules. [*Id.*, pp. 32–33 of 37] (Note: this list includes all officers, directors, managing members, et. al holding such position at the time the Debtor filed its Chapter 11 petition. Stated differently, there are no officers, directors, or managing members who resided outside of Missouri at the time the Debtor filed its Chapter 11 petition).

[4] The courthouse for the Eastern District of Missouri, St. Louis Division is located at 111 S. 10th Street, St. Louis, MO 63102. All distances from the Missouri Court were calculated using https://www.google.com/maps.

| List of Debtor's Officers, Directors, Managing Members, et. al. in Control of the Debtor within one year of the filing of the Chapter 11 Petition but who no longer hold these positions[5] | | | | |
|---|---|---|---|---|
| Name | Position | Date of Employment with Debtor | Residence | Distance from the Missouri Court[6] |
| Michael Shelton | VP – Treasurer | 07/01/72 to 12/31/15 | 348 Brunhaven Court Chesterfield, MO 63017 | 22.50 miles |
| Jack Runk | VP- Supermedia/Independents | 08/20/84 to 12/31/15 | 519 Redondo Drive, Chesterfield, MO 63017 | 22.00 miles |
| Kristy Runk Bryan | General Counsel & Secretary (continues as Secretary during wind up) | 01/01/05 to 12/31/15 | 171 Blackrock Lane, St. Charles, MO 63304 | 31.90 miles |
| John Runk | President (continues as President during wind up) | 02/01/61 to 12/31/15 | 8512 State route C, St. Genevieve, MO 63670 | 64.50 miles |
| Judith Runk | President | 01/01/08 to 12/31/15 | 8512 State route C, St. Genevieve, MO 63670 | 64.50 miles |

---

[5] *See* the Debtor's Schedules. [*Id.*, pp. 33–34 of 37] (Note: the Court only lists those officers and directors who reside in Missouri. There are two officers and/or directors who reside in Florida and one who resides in Texas. There are no officers or directors who reside in California).

[6] The courthouse for the Eastern District of Missouri, St. Louis Division is located at 111 S. 10th Street, St. Louis, MO 63102. All distances from the Missouri Court were calculated using https://www.google.com/maps.